# In the United States Court of Federal Claims

| | | |
|---|---|---|
| FREDERICK KAPLAN,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 25-333L<br>(Filed: November 23, 2026) |

Michael J. Smith and Steven M. Wald, Stewart, Wald & Smith, LLC, St. Louis, MO, with whom were Thomas S. Stewart and Reed W. Ripley, Kansas City, MO, for Plaintiff.

Adam M.Y. Estacio and Jeffrey Scott Thomas, Trial Attorneys, Natural Resources Section, Energy & Natural Resources Division, U.S. Department of Justice, Washington, DC, with whom was Adam R.F. Gustafson, Principal Deputy Assistant Attorney General, for Defendant.

## OPINION AND ORDER

**KAPLAN, Judge.**

The plaintiff in this action for compensation under the Fifth Amendment's Takings Clause, Frederick Kaplan, is the Trustee of the R&B Realty Trust (the "Trust"). The Trust owns property located at 305 Union Street in Franklin, Massachusetts. That property is adjacent to a railroad corridor that lies approximately between Milepost QVF 18.01 and Milepost QVF 19.6 in the Franklin Subdivison, Norfolk County, Massachusetts. Compl. ¶¶ 2–11, ECF No. 1.

On February 10, 2025, the Surface Transportation Board ("STB") issued a Notice of Interim Trail Use ("NITU") which authorized the railroad carrier, CSX Transportation, Inc. ("CSX"), and the Town of Franklin to negotiate an interim trail-use and railbanking agreement under the National Trails System Act. Compl. ¶ 7; 16 U.S.C. § 1247(d). The terms of the trail-use agreement were finalized on October 27, 2025. Def.'s Mot. Summ. J. at 4 [hereinafter Def.'s Mot.], ECF No. 14.

The Trust claims that it is the fee simple owner of two parcels of land adjacent to the rail corridor and that the railroad had only an easement to use the land for railroad purposes. According to the Trust, "[b]ut for the operation of the [National Trails System Act], [the Trust] would have the exclusive right to physical ownership, possession, and use of [its] property free of any easement for recreational trail use or future railroad use." Compl. ¶ 7. Therefore, the Trust claims, the issuance of the NITU resulted in a Fifth Amendment taking of its property triggering its entitlement to compensation under the reasoning of Preseault v. United States, 100 F.3d 1525 (Fed. Cir. 1996).

The government, on the other hand, contends that under Massachusetts law, the source deeds for one parcel of land conveyed fee simple determinable ownership interests to the railroad, which have since become fee simple absolute interests. It further contends that the other parcel of land was and is owned by the Town of Franklin through a Decree issued by the County Commissioners for the County of Norfolk. Def.'s Mot. at 8. The Trust's takings claim fails, the government contends, because it had no cognizable property interest as to either of the parcels at stake when the NITU was issued. See Pressly v. United States, 174 F.4th 1368, 1373 (Fed. Cir. 2026) ("If, however, the railroad company holds fee simple title to the land over which the railroad operated, no taking can occur because no third party holds underlying fee simple title that would otherwise become unencumbered upon the railroad's abandonment of operations." (footnote omitted)).

The case is before the Court on the parties' motions for summary judgment as to the government's takings liability. For the reasons set forth below, the Court agrees with the government that under Massachusetts state law the Trust has no property interest in the parcels of land at issue in this case. Therefore, the NITU did not effect a taking of property belonging to the Trust, and the government is entitled to summary judgment.

## BACKGROUND

### I. Relevant Statutes

#### A. The Transportation Act

The Transportation Act of 1920 conferred exclusive jurisdiction on the Interstate Commerce Commission ("ICC"), now the STB, over the abandonment of railroad lines in the nation's interstate rail network. Pub. L. No. 66-152, § 402, 41 Stat. 456, 477–78 (codified as amended at 49 U.S.C. § 10903). Under the Act, rail carriers must file an application with the STB if they wish to either abandon or discontinue a railroad line. 49 U.S.C. § 10903(a).

Abandoning a rail line removes it from the rail network, and the railroad no longer has an obligation to provide transportation on that line. Id. § 10904(g); Preseault v. ICC (Preseault I), 494 U.S. 1, 5 n.3 (1990). Discontinuance allows a railroad to cease operating a line indefinitely while preserving the rail corridor for reactivation of operations in the future. Preseault I, 494 U.S. at 5 n.3. The STB may only approve a railroad's application if it finds that "the present or future public convenience and necessity require or permit the abandonment or discontinuance." 49 U.S.C. § 10903(d).

#### B. The National Trails System Act

In 1983, Congress amended the National Trails System Act to give the ICC, and now the STB, the authority to "railbank" lines instead of abandoning or discontinuing them. National Trails System Act Amendments of 1983, Pub. L. No. 98-11, Title II, 97 Stat. 42, 42–50 (codified as amended at 16 U.S.C. §§ 1241–51); 16 U.S.C. § 1247(d); 49 C.F.R. § 1152.29. Under the Act, qualified public or private agencies may express their interest in sponsoring a public trail in the rail corridor by commenting on abandonment or discontinuance applications. 16 U.S.C. § 1247(d). In a standard abandonment proceeding under 49 U.S.C. § 10903, if a railroad agrees to negotiate an interim trail use agreement with the interested sponsor, the STB issues a

Certificate of Interim Trail Use or Abandonment ("CITU"). 49 C.F.R. § 1152.29(c)(1). In 1995, Congress recodified the rails-to-trails statutory framework and created an expedited process by which a rail carrier could pursue rail line abandonment through exemption from the provisions of 49 U.S.C. § 10903. Pub. L. No. 104-88, 109 Stat. 803, 808 (1995) (codified at 49 U.S.C. § 10502); 49 C.F.R. § 1152.50. If a railroad seeking an abandonment exemption agrees to negotiate with a prospective trail sponsor, the STB issues a NITU. 49 C.F.R. § 1152.29(d)(1).

## II. The Issuance of the NITU in this Case

The railroad line at issue in this case was originally built in 1849 and became part of the New York, New Haven and Hartford Railroad Company in 1898. Pl.'s Ex. A, at 24, ECF No. 15-1. The line switched ownership several times over the years before it was acquired by CSX in 1999. Id. at 25. The last remaining rail customers on the line ceased operations in the early 2000s. Id.

On December 3, 2024, CSX filed a Verified Notice of Exemption with the STB to abandon an approximately 2.09-mile rail line. Def.'s Mot. at 3 (citing Def.'s Ex. 2, ECF No. 14-2). CSX subsequently filed a correction to this notice, shortening the length of the railroad abandonment to 1.6 miles, which includes the portion of the corridor at issue in this case. Id. (citing Def.'s Ex. 3, ECF No. 14-3).

On January 14, 2025, the Town of Franklin, Massachusetts submitted a Statement of Willingness to Assume Financial Responsibility for the line. Id. at 3–4 (citing Def.'s Ex. 4, ECF No. 14-4). CSX, in turn, consented to negotiating an interim trail use agreement with the Town. Id. at 4 (citing Def.'s Ex. 5, ECF No. 14-5).

On February 10, 2025, the STB approved CSX's application and issued a NITU. Id. (citing Def.'s Ex. 6, ECF No. 14-6). About eight months later, on October 27, 2025, the Town notified the STB that it had executed a trail use agreement with CSX. Id.

## III. This Lawsuit

The Trust filed this action two weeks after the STB issued the NITU. Compl., ECF No. 1. In its complaint, the Trust alleges that at the time the NITU was issued, CSX owned an easement for railroad purposes through the Trust's property. It further alleges that "[b]ut for the operation of the [National Trails System Act], [the Trust] would have the exclusive right to physical ownership, possession, and use of [its] property free of any easement for recreational trail use or future railroad use." Id. ¶ 7. The Trust claims that, "[b]y operation of the Trails Act, the United States took the [Trust's] property [for] which it is Constitutionally obligated to pay just compensation." Id. ¶ 8.

On February 26, 2026, the government filed its motion for summary judgment as to liability. Def.'s Mot., ECF No. 14. The plaintiff filed a cross-motion for partial summary judgment on the same day. Pl.'s Mot. Summ. J. [hereinafter Pl.'s Mot.], ECF No. 15.

# DISCUSSION

## I. Summary Judgment Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). It is the moving party's burden to demonstrate that there are no genuine disputes with respect to the material facts. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Therefore, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (alteration in original) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)).

In this case, the material facts are not in dispute. The issues before the Court are purely legal ones concerning the nature of the railroad's (and the Trust's) ownership interests in the rail corridor as of the time the NITU was issued. Therefore, this case is an appropriate one for disposition by summary judgment.

## II. Takings Clause Liability in National Trails System Act Cases

The Takings Clause of the Fifth Amendment provides that "private property may not be taken for public use, without just compensation." U.S. Const. amend. V. In Preseault, the en banc Federal Circuit articulated a three-part analytical framework for determining whether the conversion of a railroad corridor to a public trail under the National Trails System Act constituted a compensable taking under the Fifth Amendment. 100 F.3d at 1533. Under that framework, the court must first ascertain the nature of the railroad's (and the Trust's) ownership interests in the rail corridor at the time the NITU was issued. Specifically, it must determine whether the railroad possessed "only easements" or if it obtained fee simple estates. Id.

The existence and nature of the property interests at stake in a Fifth Amendment takings case are determined by applying state law. Rogers v. United States, 814 F.3d 1299, 1305 (Fed. Cir. 2015) (citing Preseault, 100 F.3d at 1543); see also Pressly, 174 F.4th at 1374 ("The acquisition of property rights is governed by the law of the state in which the property sits."). When interpreting state law, this Court is bound to follow the precedent of the state's highest court, which in this case is the Supreme Judicial Court of Massachusetts. See MicroStrategy, Inc. v. Bus. Objects, S.A., 429 F.3d 1344, 1359 (Fed. Cir. 2005). Lower state court decisions should be given "careful attention," but they are not binding on this Court. Id. (citing Derungs v. Wal-Mart Stores, Inc., 374 F.3d 428, 433 (6th Cir. 2004)).

If the application of state law leads the court to conclude that the railroad owned the rail corridor in fee simple, there is no taking. Preseault, 100 F.3d at 1533 ("Clearly, if the Railroad obtained fee simple title to the land over which it was to operate, and that title inures, as it would, to its successors, the Preseaults today would have no right or interest in those parcels and could have no claim related to those parcels for a taking."). On the other hand, where the court concludes that the railroad acquired only easements, it must decide whether the terms of the easements limited the property to use for railroad purposes or whether they included future use

as public recreational trails. Id. If the court finds that the railroad's easements were broad enough to encompass recreational trails, it must determine whether the easements terminated prior to the alleged taking so that the property owners at that time held title in fee simple unencumbered by the easements. Id.

## III. The Parcel 16 Deed

As noted above, the Trust is the owner of property at 305 Union Street in Norfolk County, Massachusetts (the "Trust Property"). The rail corridor at issue in this case is immediately adjacent to the Trust Property and consists of two parcels of land – Parcels 12 and 16.




See Def.'s Ex. 7, ECF No. 14-7.

Parcel 16 is composed of what were formerly Parcels 9 and 15. In an 1850 release deed (the "Parcel 9 Deed") George W. Nason conveyed an ownership interest in Parcel 9 to the Trustees of the Norfolk County Railroad. See Pl.'s Ex. J-1, ECF No. 15-12. The Deed included a condition under which it would be rendered void if the railroad failed to maintain a depot station and a fence between Mr. Nason's property and the land conveyed. Id.

The ICC Valuation Schedule of Title, which was used to catalog railroad property interests, reflects that the railroad abandoned the station in "about 1860." See Def.'s Ex. 11, at 2, ECF No. 14-11. It is undisputed that—as a result of the railroad's abandonment of the station—fee simple ownership of Parcel 9 reverted back to Mr. Nason.

Similarly, and also in 1850, the Wrentham Bank conveyed ownership of Parcel 15 to the Trustees of the Norfolk County Railroad through a special warranty deed (the "Parcel 15 Deed"). Pl.'s Ex. J-3, ECF No. 15-14. This conveyance was made subject to the condition that the railroad maintain a depot station on the premises, providing that the deed would be void if the railroad failed to do so. As was the case with respect to the Parcel 9 Deed, the railroad failed to satisfy the stated condition. At some point before 1860, Wrentham Bank conveyed their interest in Parcel 15 to Mr. Nason. See Pl.'s Mot. at 11. Therefore, when the railroad failed to maintain the depot station in 1860, Parcel 15 reverted back to Mr. Nason.

As a result of these conveyances, Mr. Nason became the owner of both Parcels 9 and 15. He then conveyed his interests in both parcels to the Trustees of Norfolk County Railroad in the warranty deed that is the focus of the parties' arguments in this case (the "Parcel 16 Deed").

The Parcel 16 Deed states in full as follows, with the provisions relevant to the present dispute highlighted in bold:

> Know all men by these presents, that I, George W. Nason, of Franklin in the County of Norfolk and Commonwealth of Massachusetts, in consideration of the transfer of all the buildings & platforms, and all the fixtures of connected therewith at Nason's station, and one hundred and ninety five dollars, paid by Isaac Davis of Worcester, in the County of Worcester and Milcome Farnum of Blackstone, in said County James W. Converse of Rosbury in the County of Norfolk trustees of the Norfolk County Railroad Company as such trustees, the receipt whereof is hereby acknowledged to hereby give, grant, bargain, sell and convey onto the said Isaac Davis, Milcome Farnum & James W. Converse as trustees their successors and assigns a certain tract or lot of land, situated in Franklin, and belonging to said Nason, & **which was taken by the Norfolk County Railroad Company for the location construction of this Railroad**, **and also the land that was taken for the same purpose**, **which did then belong to the Wrentham Bank**, **but has since that time been conveyed to said Nason by them**, with all the rights and privileges to them belonging, with all the rights and claims that they had upon said Railroad Company for damages by taking of said lands for the location and construction of said road, which was also assigned to said Nason, in said deed & **in consideration of the above agreement, said Nason, relinquishes all claim for any further damage by him or by his heirs, administrators, or assigns sustained by the location & construction of said Railroad as it is now used, and for all time to come, that it shall be used for railroad purposes said trustees, their successors and assigns, shall maintain and keep in good repair all the fence on the line of the Railroad, against said Nason's land**, as it is now fenced and no more, and if said Nason wishes that portion of land that he now lays open, fenced, he the said Nason is to fence it himself and said Nason reserves the right at any time when most convenient to himself without stopping the cars or unnecessary injury to said Railroad, to build a Drain or culvert across and under said road east of his store as

> it now stands, to carry off the water that may from time to time collect the north side of said Railroad, and meaning hereby to release and discharge, said Railroad company and said trustees from all my claim of every kind for land damage against them or either of them, **and to give them & each or either of them the right to use all the land that ever belonged to me, that they or either of them use for said railroad, and as long as long [sic] as the same or any part whereof may be used for Railroad purposes.**
>
> To have and to hold the above granted premises, with all the privileges and appurtenances to the same belonging, to the said trustees as said trustees their successors and assigns, to them & their use and behoof **as long as said lands shall be used for Railroad purposes**. And I the said grantor for myself and my heirs, executor, and administrators do covenant with the said grantees and their successor an assigns, that I am lawfully seized in fee simple of the aforegranted premises, that they are free from all incumbrances, that I have good right to sell and convey the same to the said grantees, and their successors and assigns, **so long as said land shall be used as aforesaid**, and that I will and my heirs, executors, and administrators, shall warrant and defend the same to the said grantee and their successors and assigns forever, against the lawful claims and demands of all persons.
>
> In witness whereof the said George W. Nason and Peacy B. my wife in token of her release of all right and title of or to dower in the granted premises, have hereunto set our hands and seals this sixteenth day of April in the year of our Lord eighteen hundred and sixty.
>
> [Signatures]

Pl.'s Ex. J-2, ECF No. 15-13 (emphasis added).

## IV. The Parcel 16 Deed Conveyed a Fee Simple Determinable Interest to the Railroad

Under Massachusetts state law, "[t]he basic principle governing the interpretation of deeds is that their meaning, derived from the presumed intent of the grantor, is to be ascertained from the words used in the written instrument, construed when necessary in the light of the attendant circumstances." Patterson v. Paul, 863 N.E.2d 527, 534 (Mass. 2007); see also O'Shea v. Mark E. Kelley Co., 173 N.E. 508, 510 (Mass. 1930) (stating terms of conveyance should be considered "in the light of the circumstances existing at the time" to "carry into effect the intent of the parties").

The government contends that the language of the Parcel 16 Deed reflects that its grantor, Mr. Nason, intended to convey Parcel 16 to the railroad in fee simple determinable.[1] It further

[1] "A fee simple determinable is created by a conveyance which contains words effective to create a fee simple and in addition a provision for the automatic expiration of the estate on the occurrence of a stated event." Queler v. Skowron, 780 N.E.2d 71, 76 (Mass. 2002) (quoting Bd.

argues that the Trust never obtained Parcel 16's possibility of reverter through conveyance, inheritance, or devise and so has no ownership interest in Parcel 16. It also argues that even if the Trust did possess the possibility of reverter, its interest was not timely filed in the appropriate registry of deeds and so is unenforceable under Massachusetts law.

The Trust, on the other hand, contends that the Parcel 16 Deed conveyed only an easement to the railroad.[2] It relies on the references in the Deed that are highlighted in bold above, which it says shows that the "focus" of the Deed is on "the purpose of the transfer—the use and operation of a rail line only—which indicates the parties intended to convey an easement." Pl.'s Mot. at 23 (citation modified).

The Court finds the Trust's interpretation of the Parcel 16 Deed unpersuasive. The granting clause in the Parcel 16 Deed states, in the language highlighted in bold above, that Mr. Nason is conveying two parcels of land to the railroad: (1) Parcel 9 ("a certain tract or lot of land situated in Franklin and belonging to said Nason and which was taken by the Norfolk County Railroad Company for the location and construction of this railroad") and (2) Parcel 15 ("the land that was taken for the same purpose, which did then belong to the Wrentham Bank, but has since that time been conveyed to said Nason by them"). While the Trust relies on this passage in support of its argument that the Deed conveyed an easement, in context, the purpose of the references to the prior use of the property for the location and operation of the railroad is to describe and identify the two parcels of land being conveyed by referring to their prior ownership history.

In <u>Collins v. Massachusetts Department of Conservation & Recreation</u>, the Massachusetts Land Court held that a deed with a similar granting clause, stating that the grantor did "hereby give grant bargain sell and convey to the said corporation a certain strip of land" reflected the grantor's intent to convey a fee simple interest. No. 09 MISC 407809, 2012 WL 1013354, at *3 (Mass. Land Ct. Mar. 23, 2012). The court acknowledged that "the granting clause alone might not have sufficed to convey the fee in the strip of land" but that the language in the habendum clause also supported that the grantor intended to convey a fee. <u>Id.</u> at *7. The habendum clause stated that the grantee would have the right "to have and hold the above granted premises with the privileges and appurtenances thereto belong to said Corporation and their successors and assigns to their use and behoof forever." <u>Id.</u> at *3 (citation modified); <u>id.</u> at *7 ("This language has been found by the Supreme Judicial Court to convey a fee interest." (citing <u>Brooks v. W. Boston Gas Co.</u>, 157 N.E. 362, 363 (Mass. 1927) ("The habendum of the deed reads: 'To Have and to Hold the above granted premises, with the privileges and appurtenances thereto belonging to the said [grantee], his heirs and assigns, to his & their use and behoof forever.' . . . The habendum conveys a fee."))); <u>see</u> <u>In re Battelle</u>, 97 N.E. 1004, 1005 (Mass. 1912) ("Then followed the usual habendum clause, 'to said railroad company, their assigns, to their own use

---

<u>of Selectmen of Provincetown v. Attorney Gen.</u>, 447 N.E.2d 677, 680 (Mass. App. Ct. 1983)). It conveys ownership of property with an attached condition. <u>Id.</u>

[2] An easement does not convey ownership. Instead, it "creates a nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement." <u>Patterson</u>, 863 N.E.2d at 533 (quoting RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 1.2(1) (A.L.I. 2000)).

and behoof forever.' . . . We are of opinion that the judge was right in ruling that by the deed in question title to the land therein described passed to the railroad company in fee simple").

The purpose of a habendum clause "is to declare and fix the nature and extent of the interest or title conveyed by the deed." Elwell v. Miner, 174 N.E.2d 43, 46 (Mass. 1961). At the time the Parcel 16 Deed was executed, "a habendum clause was necessary for the grantor to convey more than a life estate in the deed." Collins, 2012 WL 1013354, at *7. The habendum clause in the Parcel 16 Deed is similar to the habendum clause the Massachusetts court relied on in Collins. It states that the railroad is being granted the right "[t]o have and to hold, the above granted premises with all the privileges and appurtenances to the same belonging to the said trustees as said trustees their successors and assigns to them and their use and behoof . . . ."

The habendum clause in the Parcel 16 Deed, however, places a condition on the conveyance that was not present in Collins. It states, as highlighted above, that the railroad's rights to have and to hold and use the property shall last "as long as said lands shall be used for railroad purposes." The Deed's covenants contain similar language also highlighted in bold above, stating that the grantor has "good right to sell and convey [the land] to the said grantees, and their successors and assigns, so long as said land shall be used as aforesaid," i.e., for railroad purposes.

The Trust also asserts that "[t]he full text of the deed states repeatedly that it shall only be used for railroad purposes." Pl.'s Resp. to Def.'s Mot. Summ. J. at 5 [hereinafter Pl.'s Resp.], ECF No. 17. But there is no language in the deed which states that the property conveyed "shall only be used for railroad purposes." The closest the Deed comes to such limiting language is in the passage, highlighted above, that begins by stating that "in consideration of the [agreement by the railroad to purchase the two pieces of land from Nason], said Nason, relinquishes all claim for any further damage by him or by his heirs, administrators, or assigns sustained by the location & construction of said Railroad as it is now used." The passage goes on to state "and for all time to come, that it shall be used for railroad purposes said trustees, their successors and assigns, shall maintain and keep in good repair all the fence on the line of the Railroad, against said Nason's land, as it is now fenced and no more . . . ." The Court understands this language to mean that "for all time to come," and so long as the property is used for railroad purposes, the railroad is required to maintain the fence between the railroad line and Mr. Nason's land.

Based on the foregoing, in the Court's view, the best reading of the Deed's language under Massachusetts law is that it reflects an intent to convey a fee simple determinable. Such a fee "is created by a conveyance which contains words effective to create a fee simple and in addition a provision for the automatic expiration of the estate on the occurrence of a stated event." Queler, 780 N.E.2d at 76; see also Thompson v. United States, 101 Fed. Cl. 416, 429 n.16 (2011) ("A fee simple determinable is an estate that will automatically end and revert to the grantor if some specified event occurs." (citation modified) (quoting Black's Law Dictionary 692 (9th ed. 2009))).

Indeed, one of the "common indicia of a determinable fee" is use of language in the habendum like "so long as," "during," or "until." Dyer v. Siano, 11 N.E.2d 451, 453 (Mass. 1937); see also Markey v. Smith, 16 N.E.2d. 20, 23 (Mass. 1938) ("Apt words of limitation have been said to be 'while,' 'as long as,' 'until,' 'during,' or 'if it is declared in the lease, that the same shall expire on the happening of any contingency.' In such cases, whenever the

contingency happens, the lease is determined by its own limitation, without any entry or other act to be done by the lessor."); Harrison v. Marcus, 486 N.E.2d 710, 714 (Mass. 1985) ("Typically, the words 'so long as' do create a fee simple determinable when used to define the nature of the interest granted.").

As noted above, the Parcel 16 Deed's habendum clause uses the phrase "as long as" the land is used for railroad purposes. The Court concludes, therefore, that the railroad held Parcel 16 in fee simple determinable. It now turns to whether the Trust maintained a possibility of reverter triggered by the issuance of the NITU.

## V. The Trust Has No Enforceable Reversionary Interest in Parcel 16

Because Mr. Nason conveyed Parcel 16 in fee simple determinable, he retained a possibility of reverter, under which ownership of the land would have reverted back to him in fee simple absolute if the railroad stopped using the land for railroad purposes. Under Massachusetts law, a possibility of reverter may be devised to an heir, descendant, or devisee. See Brown v. Indep. Baptist Church of Woburn, 91 N.E.2d 922, 924 (Mass. 1950) ("A possibility of reverter . . . must be at least as readily devisable as the other similar reversionary interest known as a right of entry for condition broken . . . ."); see also First Universalist Soc. of N. Adams v. Boland, 29 N.E. 524, 525 (Mass. 1892) ("Since the estate of the plaintiff may determine, and since there is no valid limitation over, it follows that there is a possibility of reverter in the original grantor . . . .").

In this case, however, the Trust admits that it is not heir, descendant, or devisee of Mr. Nason. Def.'s Ex. 16, at 1–2, ECF No. 14-16. Furthermore, the Court agrees with the government that—even if the Trust could prove that it had a reversionary interest in Parcel 16—under chapter 260, § 31A of Massachusetts General Laws ("Section 31A") that interest could not be enforced.

Section 31A prohibits proceedings after January 1, 1964, based upon a possibility of reverter "to which a fee simple or fee simple determinable in land is subject" which was created prior to January 2, 1955, unless one of two conditions has been satisfied: (1) that reverter has occurred before January 1, 1964, "and a person or persons having the right of entry or reverter" has "filed a certificate of entry"; or (2) that before January 1, 1964, a person entitled to the right of entry, if the reverter occurred,

> [S]hall . . . have filed in the registry of deeds . . . for the district in which the land is situated, a statement in writing, duly sworn to, describing the land and the nature of the right and the deed or other instrument creating it, and where it may be found if recorded . . . naming the person or persons appearing of record to own the fee subject to such right or possibility, or shown by the records of the tax assessors at the last prior assessment date to be the owner or owners thereof.

Section 31A.

Here, the record shows that reverter could not have occurred before January 1, 1964, because the railroad corridor was originally built in 1849 and operated continuously until the early 2000s. Pl.'s Ex. A, at 24–25. And even if reverter had occurred there is no evidence that a

person having the right of reverter filed a certificate of entry. There is similarly no evidence that a person with the possibility of reverter filed a statement in writing describing the nature of the right and the deed creating it in the appropriate registry of deeds before January 1, 1964.

In short, if the Trust held a possibility of reverter, it would be unenforceable under Section 31A. Therefore, the railroad maintained a fee simple absolute interest in Parcel 16. And, because the Trust possesses no ownership interest in Parcel 16, it did not suffer a taking of property when the STB issued the NITU and is not entitled to compensation under the takings clause.

## VI. Parcel 12

The final property at issue in this case is Parcel 12. Neither party has supplied a copy of a deed for Parcel 12. The ICC Valuation Schedule of Title the government submitted is no substitute for a deed. See Def.'s Ex. 11. It records that on April 18, 1848, the Norfolk County Railroad effected a "location based taking" of an easement over Parcel 12 for use as a highway crossing at Union Street.[3] But the grantor of the easement reflected in the Schedule of Title was the Town of Franklin, not one of the Trust's predecessors in interest.

In a takings case, the plaintiff has the burden of proving that they had an ownership interest in the property allegedly taken. Cienega Gardens v. United States, 331 F.3d 1319, 1328 (Fed. Cir. 2003) ("For any Fifth Amendment takings claim, the complaining party must show it owned a distinct property interest at the time it was allegedly taken . . . ."); see also Am. Pelagic Fishing Co. v. United States, 379 F.3d 1363, 1372 (Fed. Cir. 2004) (noting "the court's task is at an end" if the plaintiff "fails to demonstrate the existence of a legally cognizable property interest"). Here, the Trust has not supplied any evidence that might show that it has ever had any property interest in Parcel 12, much less the nature of that interest.

The Court has considered the Trust's remaining arguments regarding Parcel 12 and finds them confusing and off point. For example, in its motion, the Trust spends some time discussing Chapter 183, Section 58 of Massachusetts General Laws. That provision creates a presumption that where a parcel of land lies adjacent to a way, such as a railroad line, as is the case with respect to Parcel 12, it is presumed that the owner of that land also owns the land to the centerline of the rail line. However, this presumption only applies if the adjacent landowner or a predecessor of the adjacent landowner had a fee interest in the way. See Trs. of Bos. College v. Bos. Acad. of the Sacred Heart, Inc., 218 N.E.3d 33 (Mass. App. Ct. 2023) (finding that Section

---

[3] During the 19th Century, a railroad in Massachusetts could acquire an easement over land by filing a "location plan" with the county commissioner which automatically granted the railroad an easement with fee simple interest remaining with the original landowner. See Rowley v. Mass. Elec. Co., 784 N.E.2d 1085, 1087 (Mass. 2003); see also Agostini v. N. Adams Gaslight Co., 163 N.E. 745, 746 (Mass. 1928). As the Supreme Judicial Court of Massachusetts noted in 1854, filing of a location plan "constitutes the written, permanent, record evidence of the land taken. . . . It is conclusive upon the corporation and the landowner. It is the . . . only permanent evidence, of what the one has been permitted to take, and the other compelled to relinquish." Hazen v. Bos. & M.R.R., 68 Mass. 574, 580 (1854). Neither party has supplied the Court with a copy of the location plan filed in connection with Parcel 12.

58 “does not apply” if the grantor “did not retain any interest in the [way] at the time of the conveyance”); see also Adams v. Plan. Bd. of Westwood, 833 N.E.2d 637, 641 (Mass. App. Ct. 2005) (“[S]ince the [grantors] no longer held any interest in the fee of the disputed way, [Section 58] had no effect on the interests conveyed under the 1959 deed to [plaintiffs’ predecessor in title].”). Therefore, Section 58’s presumption is unhelpful to the Trust because the Trust has not established that it is the owner of Parcel 12.

Because it is the Plaintiff’s burden to prove the existence of a property interest in a takings case, and the Trust has not provided any evidence to support its ownership of Parcel 12, the government is entitled to summary judgment as to the Trust’s takings claim pertaining to Parcel 12. See Genuine Enabling Tech. LLC v. Sony Grp. Corp., 167 F.4th 1196, 1202 (Fed. Cir. 2026) (“On an issue where the nonmoving party bears the burden of proof, ‘[a] movant may prevail by pointing out the absence of evidence to support the nonmoving party’s case’.”) (quoting Intellicall, Inc. v. Phonometrics, Inc., 952 F.2d 1384, 1389 (Fed. Cir. 1992)). See Dairyland Power Coop. v. United States, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (finding that “[a] nonmoving party’s failure of proof concerning the existence of an element essential to its case on which the nonmoving party will bear the burden of proof at trial necessarily renders all other facts immaterial and entitles the moving party to summary judgment as a matter of law.”) (citing Celotex, 477 U.S. at 323).

## CONCLUSION

For the foregoing reasons, the government’s motion for summary judgment, ECF No. 14, is **GRANTED** and plaintiff’s cross-motion for partial summary judgment, ECF No. 15, is **DENIED**. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge